**Betty WHITE, Plaintiff,**

**v.**

**CATERPILLAR, INC., Defendant.**

**No. 91–0535–CV–W–8.**

United States District Court,
W.D. Missouri, W.D.

June 26, 1991.

Samuel K. Cullan, Von Erdmannsdorf & Mowry, Kansas City, Mo., for plaintiff.

Paul Scott Kelly, Jr., Gage & Tucker, Kansas City, Mo., for defendant.

## ORDER

STEVENS, District Judge.

Plaintiff brought this action on June 13, 1991 seeking injunctive or declaratory relief. Plaintiff was diagnosed in December, 1987 as suffering from breast cancer. She has undergone various treatment programs since then which have proved ineffective in combating the cancer.

Dr. Gary Spitzer, plaintiff's treating physician and the Director of Medical Oncology at St. Louis University School of Medicine, has recommended that plaintiff undergo high dose chemotherapy (HDCT) with autologous bone marrow transplantation (ABMT) treatment. ABMT involves withdrawing the patient's bone marrow and reintroducing it to the body after chemotherapy, thus allowing the patient to receive higher doses of chemotherapy. Dr. Spitzer believes that plaintiff has no chance of survival without HDCT–ABMT treatment, and that with conventional treatment the "disease will continue to progress and she will die." Spitzer Affidavit, Plaintiff Exhibit 3.

Plaintiff is employed by defendant and is insured through defendant's self-insurance program, the Group Insurance Benefits Plan ("Plan"). The Plan provides hospitalization and medical benefits, and qualifies as an "employee welfare benefit plan" under ERISA. 29 U.S.C. §§ 1002(1),

1132(a)(1)(B). Section X of the Plan reads as follows:

> If an Employee or Dependant undergoes a procedure which is not listed in the schedule [of surgical operations] above, the Insurance Carrier or Company shall have the sole and exclusive right to determine whether or not such procedure is a generally accepted surgical operation. The Company or Insurance Carrier will use the reports of the Clinical Efficacy Assessment Project of the American College of Physicians and the Diagnostic and Therapeutic Assessment from the Council on Scientific Affairs of the American Medical Association as a guide to determine whether a surgical procedure is a generally accepted surgical operation.

Defendant Exhibit 3A.

Defendant has denied plaintiff's application for coverage of HDCT–ABMT treatment prescribed by Dr. Spitzer. Defendant contends that the treatment is "investigational" and therefore not a generally accepted surgical operation covered under the Plan. Plaintiff Exhibit 9.

The cost of the treatment is estimated at approximately $195,000. Plaintiff does not have the financial resources to pay for the treatment. The health care facilities that provide HDCT–ABMT treatment require payment in advance or a letter from the health insurer stating that the treatment is covered under the insurer's program. Defendant has denied that the treatment is covered under the Plan.

The court held a hearing on June 17 and 18, 1991 to address plaintiff's motion to enjoin defendant from denying coverage or for declaratory relief that HDCT–ABMT treatment is covered under the Plan.[1] Based on the pleadings filed with the court and the testimony presented at the hearing, the court finds for the reasons stated below that defendant's decision denying plaintiff's application for coverage was arbitrary and capricious, and the court thus will grant plaintiff's motion for injunctive relief.

■ As a preliminary matter, the court must first determine the appropriate standard for its review in this case. The Supreme Court addressed this issue in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), finding that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." In the latter event, the question becomes whether the decision maker acted arbitrarily and capriciously. *Id.*

The Plan in this case clearly gives discretion to the administrator to make eligibility determinations. Specifically, the Plan states that defendant "shall have the sole and exclusive right to determine whether or not such procedure is a generally accepted surgical operation." Defendant Exhibit 3A. The court thus finds that an arbitrary and capricious standard of review is appropriate for reviewing defendant's decision that HDCT–ABMT treatment is investigational and therefore not covered by the Plan.

The Plan also provides that defendant will refer to two reports "as a guide to determine whether a surgical procedure is a generally accepted surgical operation," the Clinical Efficacy Assessment Project (CEAP) of the American College of Physicians and the Diagnostic and Therapeutic Technology Assessment (DATTA) from the American Medical Association. *Id.* Both parties agree that CEAP did not address the efficacy of treating breast cancer with HDCT–ABMT. The dispute at hand thus centers on what DATTA said on this issue, and the extent to which defendant should have relied on any DATTA report.

In a 1985 DATTA report, the following question was asked of DATTA panelists:

---

1. Also before the court is defendant's motion to dismiss plaintiff's complaint without prejudice for failure to exhaust the applicable administrative remedies. Defense counsel requested at the hearing, however, that the court rule on the merits of plaintiff's complaint, thus effectively waiving its exhaustion defense at this time.

"Is autologous bone marrow transplantation safe and effective for managing post-treatment (chemotherapy/radiation) bone marrow hypoplasia/aplasia[2] in patients with: a) solid tumors...." Defendant Exhibit 1. The panel concluded that ABMT is a safe and effective means of treating the side effects of HDCT, but considered it "still investigational" for including in the treatment regimen of solid tumors, such as breast cancer. Defendant Exhibit 1.

DATTA later published a second report in February, 1990 based on information and research available as of November 1, 1989. The same question was asked of the panelists in the second report, except that it did not specifically address solid tumors, but rather "cancer" in general.[3]

DATTA reported that "[t]he 45 DATTA panelists found that autologous bone marrow transplantation (ABMT) is appropriate for managing post-treatment marrow hypoplasia/aplasia in patients undergoing treatment for cancer. An overwhelming majority of panelists rated the safety and effectiveness of ABMT as established or promising." Defendant Exhibit 2.

Defendant contends that the second report did not specifically revise the earlier report with respect to the efficacy of HDCT–ABMT on solid tumors, such as breast cancer. In support of this position, defendant relies on the following statement in the second report:

Obviously, if the preconditioning regimen is ineffective in eliminating residual disease, then the success of ABMT will be compromised. However, the DATTA panelists were specifically asked to consider ABMT as a supportive measure. These DATTA questions do not address the safety of the preceding invivo chemotherapy or chemoradiotherapy regimens nor their effectiveness in producing tumor cures or remissions, but focus on ABMT as a supportive measure.

Defendant Exhibit 2. Defendant argues that because the second report focused on the efficacy of ABMT as a support measure (i.e. in treating the side effects of HDCT) and did not specifically revise the findings of the 1985 report, those earlier findings are still accurate.

Plaintiff argues that the 1985 report is dated and no longer represents current medical practice. Plaintiff's expert witness, Dr. Christopher F. Sirridge, board certified in internal medicine, oncology and hematology, and an assistant professor of those specialties at the University of Missouri at Kansas City Medical School, testified at the hearing that HDCT–ABMT is now widely recognized and used for treatment of breast cancer in certain patient populations, such as plaintiff's.[4] Plaintiff also argues that while the 1990 study did not address the efficacy of ABMT as a treatment specifically for breast cancer, the panel convincingly found that it was an appropriate treatment for the very same side effects of treating breast cancer with HDCT.

The question now before the court is whether defendant's determination that HDCT–ABMT is an "investigational" treatment for breast cancer, and its subsequent denial of plaintiff's application for coverage, was arbitrary and capricious. The court is convinced that the answer to that question is affirmative.

In an area of ever-developing medical expertise, defendant steadfastly clung to the results of a five-year old study in denying plaintiff coverage. While the 1990

---

**2.** Hypoplasia, a reduction in stem cells in the bone marrow, and aplasia, the absence of stem cells in the bone marrow, are two side effects of HDCT treatment.

**3.** The question in the second DATTA report read, "Are harvesting, cryopreservation and re-infusion of autologous bone marrow (A) safe and (B) effective methods for managing post-treatment (chemotherapy or irradiation) bone marrow hypoplasia/aplasia in patients undergoing treatment for cancer?" Defendant Exhibit 2.

**4.** Dr. Sirridge cited a January, 1991 study published in the Journal of Clinical Oncology that reported that eighty percent (80%) of the clinical oncologists polled felt that HDCT–ABMT was a reasonable therapy and would recommend it to their patients. In addition, Dr. Sirridge opined that a doctor would be medically negligent not to offer the treatment, including a consultation with the centers that perform it, to an appropriate patient.

study should have put defendant on notice that the efficacy of treating breast cancer with HDCT–ABMT was at least debatable and that further examination of the issue by defendant would therefore be prudent, defendant chose instead to bury its head in the sand.

The 1990 DATTA study, however, is clearly not the only recent analysis on the subject that should have caused defendant at least to reexamine its position on the issue. Prior to the hearing of this matter plaintiff had provided defendant with copies of four recent articles [5] addressing the treatment of breast cancer with HDCT–ABMT. Defendant not only failed to consider the analyses contained in those articles, but from the testimony of Dr. Robert Hertenstein, the Medical Director of Group Insurance for defendant, no one for defendant ever even read the articles.

Defendant responds that the Plan mentions two sources that defendant could consult in its determination, CEAP and DATTA, and not the other sources offered by plaintiff. The court rejects this argument for two reasons. First, the Plan's recognition of these two sources is not exclusive. The Plan states simply that the "Company ... will use the reports of [CEAP] and [DATTA] as *a guide* to determine whether a surgical procedure is a generally accepted surgical operation" (emphasis added). Defendant Exhibit 3A. Nowhere does the Plan state that defendant may use "only" the reports of CEAP and DATTA in making its coverage decisions.

■ Secondly, in stating that defendant will use these reports "as a guide" it is clearly not instructing defendant to abdicate all responsibility in the decision process to these reports, particularly when one report never addresses the subject and the

other is five years old. Defendant clearly had the opportunity to examine other sources and to exercise independent judgment in determining whether HDCT–ABMT treatment is generally accepted for the treatment of breast cancer. The court finds that its failure to undertake such steps was arbitrary and capricious. *See Rollo v. Blue Cross, Blue Shield of New Jersey*, 1990 U.S. Dist. LEXIS 5376 (D.N.J. 1990) (Court granted permanent injunction against insurer's denying coverage of HDCT–ABMT for Wilms' tumor, stating that defendant's decision-making process "was abused, most particularly because the information which would have informed Blue Cross/Blue Shield ... was ignored while information concerning other solid tumors was deemed dispositive for no reason which appears in this record.").

As further evidence of defendant's dogged refusal to consider information [6] other than the 1985 DATTA study, defendant has failed to reconsider its position since receiving the affidavit of Elizabeth Brown, M.D., who is the Director of the very agency that administers the DATTA studies. She swears in her affidavit to the accuracy of the following statements:

2. The most recent diagnostic and therapeutic assessment from the Council on Scientific Affairs of the American Medical Association, which addersses [sic] autologous bone marrow transplantations, *does not* list autologous bone marrow transplantation in conjunction with high dose chemotherapy for the treatment of breast cancer as "investigational".

3. There is no document published by the Council on Scientific Affairs of the American Medical Association providing a diagnostic and therapeutic assessment

---

**5.** Dunphy, *Treatment of Estrogen Receptor–Negative or Hormonally Refractory Breast Cancer with Double High–Dose Chemotherapy Intensification and Bone Marrow Support*, Journal of Clinical Oncology, Vol. 8, p. 1247 (1990); Spitzer, *Autotransplantation in Solid Tumors*, Blood Review, p. 1, (1991); Spitzer, *Autologous Bone Marrow Transplantation in Solid Tumors*, Current Opinion in Oncology, Vol. 3, p. 238 (1991); Peters, *High Dose Combination Alkylating Agents with Autologous Bone Marrow Transplantation*

*for Primary and Metastatic Breast Cancer*, Journal of Clinical Oncology, Vol. 4, p. 646 (1989).

**6.** The court rejects the notion that the phone call which defendant placed to Metropolitan Life Insurance Company, to find out Metropolitan's policy on HDCT–ABMT treatment, was sufficient to fulfill defendant's responsibility to make a coverage determination in a non-arbitrary and non-capricious manner.

which lists the above described procedure as "investigational".

4. The Department of Technology Assessment of the American Medical Association and the council on Scientific Affairs has not investigated, nor published any materials on the effectiveness or efficacy of bone marrow transplantation in conjunction with high dose chemotherapy for the treatment of breast cancer specifically.

Plaintiff Exhibit 17 (emphasis in original).[7]

The court thus finds that defendant's decision that HDCT–ABMT treatment for breast cancer was investigational and therefore not covered by the plan was arbitrary and capricious. *See Pirozzi v. Blue Cross–Blue Shield of Virginia*, 741 F.Supp. 586 (E.D.Va.1990) (court found that HDCT–ABMT was not experimental treatment for breast cancer and thus was covered under defendant's insurance plan); *Adams v. Blue Cross/Blue Shield of Maryland*, 757 F.Supp. 661 (D.Md.1991) (court rejected defendant's contention that HDCT–ABMT treatment for breast cancer was experimental and enjoined defendant from denying coverage). The next question is whether the injunctive relief sought by plaintiff is appropriate in this case.

In order to grant a preliminary injunction, the court must consider: (1) the threat of irreparable harm to plaintiff if relief is not granted; (2) the likelihood that plaintiff will succeed on the merits; (3) the balancing of the equities between both parties; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir.1981).

First, plaintiff will probably suffer the greatest harm possible, loss of life, if she is denied coverage for the prescribed treatment. Dr. Sirridge testified that plaintiff's chance of cure with conventional treatment is "clearly less than ten percent and may approach zero percent in all reasonable clinical scenarios."

Second, the court finds that plaintiff has a likely chance of success on the merits and therefore of securing a permanent injunction. Defendant clearly acted arbitrarily in denying coverage and plaintiff has a very good chance of proving that that decision was made in error. *See Dataphase*, 640 F.2d at 114 (court need not find that plaintiff has a greater than 50% chance of succeeding on the merits).

Third, the court finds that the equities weigh in favor of plaintiff. While the cost to defendant of covering plaintiff's treatment is not insignificant, plaintiff's condition is sufficiently rare that it is not likely to result in a flood of similar claims.[8] *See Dozsa v. Crum & Forster Ins. Co.*, 716 F.Supp. 131, 140 (D.N.J.1989). The urgency of plaintiff's request for relief and the fact that any delay in granting relief will diminish the treatment's chance of success both clearly cut in favor of granting a preliminary injunction.

Finally, the court agrees with the finding of the court in *Dozsa* on the issue of the public's interest, when the court stated that "[i]f the cost of the treatment is properly covered under the Plan, as I think it is, the public's interest is in seeing that plaintiff receives the benefits to which he is entitled." *Id.* (preliminary injunction granted against defendant denying coverage of HDCT–ABMT treatment for multiple myeloma as experimental). Furthermore, the court believes after listening to the testimony of Dr. Hertenstein, the Medical Director of Group Insurance for defendant, and John Varda, the Group Insurance Manager for defendant, that defendant is firmly committed to rejecting plaintiff's claim, and that it therefore would be futile to remand the case for further determination by defendant.

---

7. Defendant's argument that this affidavit was furnished to defendant only upon the commencement of litigation seems to imply that defendant's continued refusal to grant coverage of the prescribed treatment is, at least at this time if not before, arbitrary and capricious.

8. Defense counsel stated at the hearing that defendant has had only three similar cases in the last three years.

■ The court thus finds that plaintiff has satisfied the four requisite elements for a preliminary injunction and that such relief is appropriate under the circumstances of this case. The court also notes that, given plaintiff's financial inability to pay for the prescribed treatment, requiring plaintiff to post a bond for the amount of the treatment would have the effect of defeating the court's relief. *See Dozsa,* 716 F.Supp. at 140. The court therefore will not require plaintiff to post a bond.

Finally, plaintiff has filed a request for attorney's fees to which defendant has not yet responded. The court wishes to hear defendant's response and thus will not address plaintiff's motion for fees at this time. Accordingly, it is

ORDERED that plaintiff's motion for a preliminary injunction is granted. Defendant is enjoined from denying coverage of HDCT–ABMT treatment to plaintiff under the Group Insurance Benefits Plan administered by defendant. It is further

ORDERED that defendant's motion to dismiss is denied. It is further

ORDERED that plaintiff's motion for attorney's fees is held in abeyance. Defendant shall file any response to plaintiff's motion within 10 days of the date of this order.