951 F.2d 89
 60 USLW 2544, 14 Employee Benefits Cas. 2289
 Joe Frank HOLDER, Individually, and as Independent Executor
of the Estate of Wanda Maurine Holder, Deceased,
Plaintiff-Appellant,
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, and Andy Mathis,
Defendants-Appellees.
Joe Frank HOLDER, Individually, and as Independent Executor
of the Estate of Wanda Maurine Holder, Deceased,
Plaintiff-Appellee,
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA and Andy Mathis,
Defendants-Appellants.
 Nos. 91-8071, 91-8184
 Summary Calendars.
United States Court of Appeals,
Fifth Circuit.
 Jan. 21, 1992.
 
 William Vance Dunnam, Jr., Dunnam, Dunnam, Horner & Meyer, Waco, Tex., for plaintiff-appellant.
 David G. Tekell, Beverly W. Bracken, Naman, Howell, Smith & Lee, Waco, Tex., for defendants-appellees.
 Appeals from the United States District Court for the Western District of Texas.
 Before JONES, DUHE, and WIENER, Circuit Judges.
 EDITH H. JONES, Circuit Judge:
 
 
 1
 Plaintiff-appellant Joe Frank Holder sued defendants-appellees Prudential Insurance Company of America and its agent, Andy Mathis for coverage of a medical procedure performed on his now-deceased wife. The district judge found that the treatment was "experimental in nature" and had not yet been "commonly and customarily" recognized throughout the medical profession, as a result of which was excluded from coverage under the terms of the policy. Plaintiff appeals. We affirm.I.
 
 
 2
 In 1987, Wanda Maurine Holder was diagnosed with breast cancer. The tumor and surrounding tissue were removed from her breast and she underwent standard chemotherapy. In October 1987, a recurrence of the cancer was discovered and diagnosed, and Mrs. Holder was referred by her treating physician to M.D. Anderson Hospital in Houston, Texas for further treatment. There she underwent additional chemotherapy.
 
 
 3
 Mrs. Holder was approached by her doctors at M.D. Anderson Hospital to accept a treatment of high-dose chemotherapy coupled with an autologous bone marrow transplantation ("HDC-ABMT"). Mrs. Holder signed a consent form for the treatment which noted that the procedure was an "experimental study;"[1] she participated in the treatment and died of complications.
 
 
 4
 Mrs. Holder was a beneficiary under a health insurance plan provided by her husband's employer and purchased from Prudential Health Insurance Company of America ("Prudential"). Mr. Holder submitted a claim to Prudential for hospital and physician expenses associated with the HDC-ABMT treatment. Prudential partially denied coverage based on the policy exclusion for experimental treatment.
 
 II.
 
 5
 Plaintiff's contention on appeal is that the district court erred in finding the HDC-ABMT treatment experimental and therefore excluded from policy coverage. The parties do not here dispute that this court reviews a district court's factual findings under the clearly erroneous standard of review. F.R.Civ.P. 52(a).[2]
 
 
 6
 The policy provided that it did not cover treatment not reasonably necessary for medical care. To be "reasonably necessary," a treatment must be ordered by a doctor and customarily recognized as appropriate, and it could not be experimental in nature.[3] The trial court was presented with two live expert witnesses and the deposition testimony of two others. The court found the testimony of Dr. Fehir, a M.D. and a Ph.D. in immunology and transplantation biology offered by Prudential, to be "most compelling."
 
 
 7
 The opinions of the experts were conflicting on the experimental nature of the treatment extended to Mrs. Holder. Although HDC-ABMT was not considered "experimental" in the treatment of other cancers (leukemia, Hodgkin's disease, and lymphoma), the issue was whether it was experimental in the treatment of Stage IV metastatic breast cancer. Clinical studies were referred to which showed that this procedure for the treatment of this disease was still being investigated at the time of Mrs. Holder's treatment. Further, the protocol used on her was only given to twenty or thirty women nationwide and was regulated by the FDA.
 
 
 8
 The trial court was in the best position to view the evidence and weigh the testimony of the expert witnesses, among whom Dr. Fehir's testimony was found to be most credible. The court also relied on the signed consent form describing the treatment as an "experimental study." Upon reviewing the record and evidence presented, we cannot say that the trial court was clearly erroneous in its findings.
 
 III.
 
 9
 Plaintiff alternatively appears to argue that as a matter of law HDC-ABMT treatment for Stage IV metastatic breast cancer is not experimental. This contention must also fail. The various district court decisions that found coverage despite such exclusionary provisions are readily distinguishable from the case at hand.[4] Of course, it is the nature of medical research that what may one day be experimental may the next be state of the art treatment. Had Mrs. Holder undergone a similar treatment more recently under an accepted protocol, this case may have turned out differently.[5]
 
 IV.
 
 10
 Prudential and Mathis, through a separate appeal, assert that the district court erred in not awarding attorney fees in this ERISA action. Under ERISA the court has discretion to award attorney fees to either party. 29 U.S.C. 1132(g)(1). This court uses a five factor test to determine whether a party is entitled to attorney fees. See Ironworkers Local No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir.1980). Prudential argues that this five factor test is suspect when the defendant is the prevailing party because the test appears to be geared toward the plaintiff.
 
 
 11
 Prudential argues that this court should apply a Seventh Circuit test announced in Bittner v. Sadoff & Rudoy Industries, 728 F.2d 820, 829 (7th Cir.1984). The Seventh Circuit analogized to the Equal Access to Justice Act in stating, "These words create a modest presumption ... in favor of awarding reasonable attorney's fees to the winning party, plaintiff or defendant, unless the loser's position, while rejected by the court, had a solid basis--more than merely not frivolous, but less than meritorious ... This standard is consistent with previous articulations of the test under Section 1132(g)(1) but is simpler and more definite." Bittner, 728 F.2d at 830.
 
 
 12
 The decision to award attorney's fees is committed to the discretion of the district court. We need not decide whether to embrace the Seventh Circuit's test because even if that test were to be applied, we cannot say that the district court abused its discretion here. The experimental nature of Mrs. Holder's treatment raised an undecided issue of fact. Holder's experts stated that the treatment was not experimental in nature, while the case law has split. To impose attorneys' fees upon Holder under these circumstances would have added insult to injury.
 
 V.
 
 13
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The consent form, signed by Mrs. Holder, provided:
 
 
 [2]
 PURPOSE OF STUDY: This is an experimental study which uses high doses of mitoxantrone, etoposide (VP-16) and thiotepa (MVT) in the treatment, combined with bone marrow transplantation. The use of higher-than-normal doses of chemotherapy carries with it a greater risk of complications to both the blood-forming cells of the body (the marrow) and other organs. Therefore, the purposes of this study are: 1) to find if such a combination is associated with acceptable toxicity to organs other than the bone marrow when used with the infusion of autologous marrow; and 2) to determine if, at these high doses, there is a significant response rate [shrinkage of the tumor]
 Emphasis added.
 
 
 [2]
 In the lower court, Prudential contended that its officials exercised administrative discretion over the benefit determinations, entitling their decisions to judicial review under the deferential arbitrary and capricious standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The district court disagreed. Prudential has not taken issue with this ruling on appeal
 
 
 [3]
 The policy provides that it does NOT cover:
 Non-essentials, check-ups--Anything not ordered by a doctor or not reasonably necessary for medical care of sickness or injury. To be "reasonably necessary," a service or supply must be ordered by a doctor and be commonly and customarily recognized throughout the doctor's profession as appropriate in the treatment of the diagnosed sickness or injury. It must neither be educational or experimental in nature, nor provided.
 Emphasis added.
 
 
 [4]
 See Pirozzi v. Blue-Cross Blue-Shield of Va., 741 F.Supp. 586 (E.D.Va.1990) (The court found coverage under the policy but was based on different policy language. The court noted the limited nature of the decision and that "Of course, a different experimental exclusion, or different expert testimony, or a plan that conferred broad discretion on the administrator might well require a different result."); Dozsa v. Crum & Forster Ins. Co., 716 F.Supp. 131 (D.N.J.1989) (did not deal with breast cancer); Tishman Rollo v. Blue Cross/Blue Shield of N.J., Civ. Action No. 90-597, 1990 WL 312647 (3/22/90 unreported) (dealt with a child suffering from relapsed Wilms' tumor, a disease found almost exclusively in young children.); But compare Thomas v. Gulf Health Plan, Inc., 688 F.Supp. 590 (S.D.Ala.1988) (it is undisputed that autologous bone marrow transplantation for the treatment of breast cancer is still considered experimental or investigative, even though such treatment is no longer considered experimental by Blue Cross for certain other types of cancer); Sweeney v. Gerber Products Co. Medical Benefits Plan, 728 F.Supp. 594 (D.Neb.1989) ("High dose chemotherapy accompanied by ABMT as a treatment for breast cancer is in an early stage of development ... the treatment is investigational and experimental (as those terms are ordinarily defined) and has not yet been commonly and customarily (as those terms are ordinarily defined) recognized throughout the medical profession as appropriate treatment of metastic breast cancer. The consensus in the literature is that the treatment is investigational ... the doctor's own forms ... "experiment" ... several different protocols are being experimented with. Different doctors are experimenting with different drugs in different dosages.")
 
 
 [5]
 Several recent studies and the cases in which they have been applied to compel coverage of HDC-ABMT treatment for Stage IV metastatic breast cancer lead to the conclusion that the treatment, under a different protocol than that administered to Mrs. Holder, may no longer be considered experimental. See White v. Caterpillar, Inc., 765 F.Supp. 1418 (W.D.Mo.1991); Bucci v. Blue Cross-Blue Shield of Connecticut, Inc., 764 F.Supp. 728 (D.Conn.1991); Adams v. Blue Cross/Blue Shield of Maryland, Inc., 757 F.Supp. 661 (D.C.Md.1991)