**UNITED STATES of America, Plaintiff,**

v.

**Michael L. BELDEN, Westmaster Electronics Corp., d/b/a Westmaster Research, and Anglo American Cosmetics, Ltd., Defendants.**

**No. 86–CV–659.**

United States District Court,
N.D. New York.

Nov. 23, 1987.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., for plaintiff; Joseph A. Pavone, Asst. U.S. Atty., of counsel.

Feit & Schlenker, Westmaster and Anglo American, Albany, N.Y., for defendants; Dennis B. Schlenker, of counsel.

Michael L. Belden, Watertown, N.Y., pro se.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

This is a civil action in which the government seeks to have the named defendants enjoined from committing mail and wire fraud, see 18 U.S.C. §§ 1341 and 1343, through a scheme to obtain money by means of false and misleading representations concerning certain hair care products purportedly designed to reverse male pattern baldness. The action was commenced under 18 U.S.C. § 1345. A hearing was held on July 2, 1986 after the court issued an order to show cause why a preliminary injunction should not be imposed on defendants pursuant to § 1345. The court finds that a preliminary injunction would be unwarranted at this time.

Defendants Westmaster Electronics Corp. ("Westmaster") and Anglo American Cosmetics Ltd. ("Anglo American") are Canadian corporations incorporated in the province of Ontario. Both corporations share common shareholders, officers, and directors, both maintain their principal place of business at the same address in Toronto, Ontario, and both conduct business out of the same office at 233 J.B. Wise Place in Watertown, New York. Defendant Belden was employed by the defendant corporations at the Watertown Office and shipped their products through the United States mails and United Parcel Service to purchasers in the United States. The government has presented evidence that the defendant corporations and their agents have promoted their hair care products through newspaper advertisements, advertising flyers sent through the United States mails, and through representations made over the telephone. This promotional

campaign was based on a series of false and misleading representations concerning these hair care products. A "hair and scalp lotion" defendants offered for sale was represented to be identical to a product sold in Canada under the name of "Formula MJS" when in fact the two products were distinctly dissimilar in chemical composition. The advertisements distributed by the defendant corporations, *see* Exhs. 2, 4 and 5, contained statements strongly implying that the hair care products sold by defendants were an effective remedy for hair loss and pattern baldness. In fact, there is no evidence that those products can restore hair growth. Some of the advertisements indicate that the hair care products were being distributed in the United States on a limited basis as part of a "market test" intended to generate testimonials so that approval for the products by the Food and Drug Administration ("FDA") could be obtained. In fact, the products were being distributed widely, the defendant corporations had made no effort to comply with any of the FDA's registration requirements for drugs intended for human use, *see* 21 C.F.R. Part 312 (1987), and in any event testimonials by lay consumers play no part in the FDA's determination of whether to approve a product for distribution in the United States. The government has established by a preponderance of the evidence that defendants were engaged in a scheme to defraud consumers through material misrepresentations about the products they sold and that these misrepresentations were made through the mails and through the use of the telephone.

■ Section 1345 provides:

Whenever it shall appear that any person is engaged or is about to engage in any act which constitutes or will constitute a violation of [the federal mail, wire or bank fraud statutes], the Attorney General may initiate a civil proceeding in a district of the United States to enjoin such violation. The court shall proceed as soon as practicable to the hearing and determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought. A proceeding under this section is governed by Federal Rules of Civil Procedure, except that, if an indictment has been returned against the respondent, discovery is governed by the Federal Rules of Criminal Procedure.

18 U.S.C. § 1345. This provision was enacted as part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 1984 U.S.Code Cong. & Admin.News (98 Stat.) 1837, and has been the subject of little meaningful interpretation in published opinions. Ordinarily, a preliminary injunction may not issue from this court absent a showing of irreparable harm and either (1) that it is probable that the party seeking injunctive relief will prevail on the merits, or (2) that sufficiently serious questions going to the merits are raised and that the hardships placed on the party seeking the preliminary injunction if such relief is denied clearly outweigh the hardships that would be incurred by the party opposing the imposition of the injunction if such relief is granted. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979); *see also Power Test Petroleum Distributors v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir.1985). The government argues with some force that this standard is not applicable when preliminary injunctive relief is sought under § 1345.

The legislative history of § 1345 indicates that Congress was concerned about the possibility that innocent people would continue to be victimized by fraudulent schemes during the often lengthy period of time required to investigate such schemes and bring criminal charges against its perpetrators. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 401–02, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3539–40 (hereinafter "Senate Report"). At the time § 1345 was enacted, the postal service

was empowered to obtain a temporary restraining order and preliminary injunction pursuant to Fed.R.Civ.P. 65 directing the detention of incoming mail pending the completion of administrative proceedings by postal authorities upon a showing that there was probable cause to believe the mailings to be detained furthered a fraudulent scheme. 39 U.S.C. §§ 3005(a), 3007. The Judiciary Committee of the Senate, reporting on the proposed statute providing injunctions against fraud, found that the avenue of preliminary relief provided by 39 U.S.C. § 3007 was too limited because it did not restrict future mailings or schemes that did not directly involve the United States mails. Senate Report at 402. Observing that "[e]xperience has shown that even after indictment or the obtaining of a conviction, the perpetrators of fraudulent schemes continue to victimize the public," the Judiciary Committee concluded that broader equitable relief should be available so that "whenever it appears that a person is engaged or is about to engage in a criminal fraud offense ..., the Attorney General should be empowered to bring suit to enjoin the fraudulent acts or practices." *Id.*

In construing the provisions of 39 U.S.C. § 3007, the courts have concluded that the common law requirement that irreparable harm be shown before a preliminary injunction is issued was superceded by the congressional intention that the courts exercise their equitable powers on a mere showing of probable cause in the limited circumstances covered by § 3007. *See, e.g., United States Postal Service v. Beamish*, 466 F.2d 804, 806 (3d Cir.1972); *United States Postal Service v. Stimpson*, 515 F.Supp. 1149, 1150 (N.D.Fla.1981); *United States v. International Term Papers, Inc.*, 351 F.Supp. 76, 77 (D.Mass.1972), *vacated on other grounds*, 477 F.2d 1277 (1st Cir. 1973). The report of the Judiciary Committee indicates that § 1345 was enacted to provide the government a means "to put a speedy end" to a fraudulent scheme "whenever [the Attorney General] determines he has received sufficient evidence of a viola-

tion of [the federal mail, wire, or bank fraud statutes] to initiate such an action." Senate Report at 402, U.S.Code Cong. & Admin.News 1984, p. 3540. Though the language of the statute itself and the legislative history underlying it is not crystal clear, it is unlikely that Congress intended to hold the government to a more stringent standard than that of probable cause when relief under § 1345 was sought, since § 1345 was intended to make it easier for the government to obtain preliminary injunctions as a means of terminating fraudulent schemes during the pendency of criminal investigations than had been possible under 39 U.S.C. § 3007. Indeed, it is probable that Congress considered the continued existence of a scheme to defraud as irreparable harm *per se*, since it is likely that the victims of such a scheme would not be able to recover money lost as a result of it. *Cf. Government of the Virgin Islands v. Virgin Islands Paving Inc.*, 714 F.2d 283, 286 (1st Cir.1983) ("[W]hen a statute contains, either explicitly or implicitly, a finding that violations will harm the public, the courts may grant preliminary equitable relief on a showing of a statutory violation without requiring any additional showing of irreparable harm"); *Securities & Exchange Comm'n v. Management Dynamics, Inc.*, 515 F.2d 801, 808–809 (2d Cir.1975) (to the same effect).

 It appears, however, that Congress in enacting § 1345 was concerned about fraudulent schemes being perpetrated on innocent persons at present and in the future. The report of the Judiciary Committee, echoing the actual language of the statute, indicates that the court is to grant preliminary injunctive relief when "warranted to prevent a continuing and substantial injury to the class of persons designed to be protected by the criminal statute allegedly being violated." Senate Report at 402, U.S.Code Cong. & Admin. News 1984, p. 3540. In essence, it appears to the court that the issuance of a preliminary injunction under § 1345 must be supported by a showing that there is probable

**46**

cause to believe that the defendants are currently engaged or are about to engage in a fraudulent scheme violative of the federal mail, wire or bank fraud statutes. A showing that a scheme has been carried out in the past—even in the recent past—is relevant to the determination of the probability that such a scheme will be perpetrated in the future, but is not dispositive when other circumstances indicate that there is little danger that the scheme will continue into the future. In the case at bar, the government has seized defendants' inventory of hair care products and this court has sanctioned the retention of those products by the government in a related action. *See In the Matter of a Search Warrant For "Premises Located at 233 J.B. Wise Place, Empsall Plaza, Room 21, Watertown, New York" (Anglo American Cosmetics Ltd. v. United States)*, Misc. No. 1469 (Mag. No. 55088), 1987 WL20385 (N.D.N.Y. 1987). In that related action, the government did not contest Anglo American's contention that the seizure of hair care products effectively put the company out of business. There has been no showing that there is probable cause to believe that any of the defendants have revived or will revive their fraudulent scheme in the future, and therefore preliminary injunctive relief is inappropriate at this time. The government's application is denied without prejudice to a renewed motion for preliminary relief or to the pursuit of permanent injunctive relief after a full hearing on the merits.

It Is So Ordered.