UNITED STATES of America, Plaintiff,

v.

Thomas J. BARNES, 10 North Central Avenue, Hartley, Iowa 51346; American Savings Express, 185 South Central Avenue, Hartley, Iowa 51346–1412; American Savings Express, 200 South Central Avenue, Hartley, Iowa 51346–1415; Images International, 61 North 1st Avenue East, Hartley, Iowa 51346–1121; Images International Diamond Fulfillment and American Savings Express, P.O. Box 28, Hartley, Iowa 51346–0028; American Savings Express and Coupon Express, P.O. Box 3247, Sioux City, Iowa 51101, Defendants.

No. C 95–4132–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Jan. 25, 1996.

Willis A. Buell, Assistant U.S. Attorney, Sioux City, Iowa, and John A. Ruberti, Postal Inspector Attorney, Inspection Service Operations Support Group—Chicago, Chicago, Illinois, for the U.S.

Stanley E. Munger of Munger & Reinschmidt, Sioux City, Iowa, for Defendants.

### ORDER NUNC PRO TUNC

BENNETT, District Judge.

The attached Order Adopting Consent Preliminary Injunction is substituted *nunc pro tunc* for the Order Adopting Consent Preliminary Injunction previously filed on December 28, 1995, and shall be effective from the date on which the original order was filed.

**IT IS SO ORDERED.**

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................. 1189
 A. Procedural Background .......................................... 1189
 B. Factual Background ............................................ 1190
II. LEGAL ANALYSIS ............................................... 1192
 A. Standards For A Preliminary Injunction ........................... 1192
 1. "Dataphase" standards ....................................... 1192

2. Special standards for § 1345 injunctions ........................ 1193
B. Whether A Preliminary Injunction Is "Appropriate" In This Case ....... 1196
C. Scope Of The Injunction ........................................ 1198

III. CONCLUSION .............................................. 1198

---

## ORDER ADOPTING CONSENT PRELIMINARY INJUNCTION

Following this court's issuance of a temporary restraining order *ex parte*, the court held a hearing on plaintiff's request for a preliminary injunction pursuant to 18 U.S.C. § 1345 to enjoin activities of defendants who were allegedly engaged in mail fraud in violation of 18 U.S.C. § 1341. The fraud alleged consisted of soliciting and obtaining fees by mail from applicants for unsecured credit cards, but providing instead of the expected credit cards a merchandise catalogue and further credit card applications requiring payment of additional fees. Before completion of the hearing on the preliminary injunction, at the court's urging, the parties entered into negotiations that produced a consent preliminary injunction, which was read into the record. The court enters this written order confirming its adoption of the consent preliminary injunction and further commenting on the appropriate standards and burdens of proof for issuance of a preliminary injunction pursuant to 18 U.S.C. § 1345. Such comments are particularly appropriate here, because the court strongly disagrees with the burden of proof urged by the government. The court has instead applied the burden of proof articulated in a decision, which the government did not even cite in its brief or argument, from the only federal court of appeals to consider the question.

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On December 12, 1995, plaintiff United States filed its complaint in this civil action for injunctive and equitable relief pursuant to 18 U.S.C. § 1345 against defendants Thomas J. Barnes and various companies in whose name Mr. Barnes was allegedly doing business. The complaint alleged the defendants to be currently engaged and to have been engaged for some time in a fraudulent scheme to obtain money or property through the mail. The scheme purportedly involves sending through the U.S. Mail direct solicitations and placing advertisements in newspapers which contain materially false and misleading representations and omissions of material fact. The complaint sought a temporary restraining order *ex parte* and a preliminary injunction as well as permanent injunctive and other equitable relief. Also on December 12, 1995, the United States submitted a brief in support of its application for a temporary restraining order and a preliminary injunction with accompanying exhibits and affidavits.[1]

Upon consideration of the complaint and exhibits annexed thereto, on December 12, 1995, the court granted the plaintiff's temporary restraining order *ex parte*, but in a form much more limited in scope than the United States had requested. On December 14, 1995, the United States, on behalf of one of

---

1. The government's brief was most unsatisfactory, indeed misleading, in that it failed to cite the decision of the Sixth Circuit Court of Appeals in *United States v. Brown*, 988 F.2d 658 (6th Cir. 1993), which is not so recent as to excuse the government's failure to find and discuss it. The *Brown* decision is critical to disposition of any motion for a preliminary injunction under 18 U.S.C. § 1345, because of its discussion of the appropriate standards and burdens of proof for issuance of such an injunction as well as such an injunction's proper scope. Thus, the govern-

ment's brief is an example of the kind of gross oversight that can result from failure to update a "canned" brief, however repetitive a specialized practice may become. Merely "Shepardizing" the cases cited in the government's brief would have revealed the *Brown* decision. At worst, the government knew of the case, and intentionally failed to cite it; at best, the government was negligent in failing to find and discuss applicable case law. In either case, the court expects more from the government, particularly when the government attorneys involved are specialists.

the banks mentioned in the restraining order as holding funds of defendants, sought a modification of the temporary restraining order. The modification sought was to allow Best Bank of Boulder, Colorado, to debit defendants' accounts for payment of return items received by the bank, either by direct collection or through the Federal Reserve system as stop payments or authorization revoked notices, so that consumers could receive reimbursement for charges to their accounts. The court granted the modification by order dated December 16, 1995.

On December 20, 1995, the United States filed a separate motion for a preliminary injunction. In the temporary restraining order issued on December 12, 1995, defendants were also directed to serve any documents or papers in response to the temporary restraining order and motion for preliminary injunction on or before December 20, 1995. On December 20, 1995, defendants filed an appearance of counsel and a motion to vacate the temporary restraining order on the grounds that the United States had no standing to seek the *ex parte* temporary restraining order and has none to seek a preliminary injunction, the court is without jurisdiction to grant the relief set forth in the temporary restraining order or sought in the application for a preliminary injunction, and that plaintiff did not present sufficient good cause for the court to grant an *ex parte* temporary restraining order and cannot present sufficient evidence to show that defendants have committed a violation of 18 U.S.C. § 1345,[2] or to meet the requirements of *Fed.R.Civ.P.* 65, for the issuance of any preliminary injunctive relief.

Finally, in its order of December 12, 1995, the court also set a hearing on plaintiff's application for a preliminary injunction for December 22, 1995. However, by order dated December 19, 1995, the hearing was rescheduled for 9:00 a.m. on December 21, 1995, at the request of defendants' counsel. That hearing was held in due course. The United States was represented by Willis A. Buell, Assistant U.S. Attorney, of Sioux City, Iowa, and John A. Ruberti, Postal Inspector Attorney, Inspection Service Operations Support Group—Chicago, of Chicago, Illinois. Defendants were represented by counsel Stanley E. Munger of Munger & Reinschmidt, of Sioux City, Iowa. The hearing was recessed so that the parties, at the court's urging, could attempt to negotiate a consent preliminary injunction. The parties eventually agreed to the language of such a consent preliminary injunction and read it into the record. That consent preliminary injunction stated, *inter alia,* that this court has found that a consent preliminary injunction should issue. Therefore, the court enters this written order to confirm its adoption of the parties' consent preliminary injunction, to identify the standards, and to comment on the burdens of proof for, issuance of a preliminary injunction pursuant to 18 U.S.C. § 1345, and to state the grounds upon which issuance of a consent preliminary injunction is proper in this case.

### B. Factual Background

■ The complaint, attached exhibits and affidavits, and testimony offered thus far at the hearing provide the following factual background for consideration of whether the consent preliminary injunction is appropriate in this case. However, the evidentiary hearing on the government's motion for a preliminary injunction was terminated, at the court's urging, before defendants presented

---

**2.** The court presumes that, recognizing the haste with which responses to applications for preliminary injunctions must be prepared, defendants meant that there was insufficient evidence of a violation of 18 U.S.C. § 1341, which states one of the predicate offenses, mail fraud, for injunctive relief under 18 U.S.C. § 1345. One does not "violate" § 1345; § 1345 provides for injunctive relief when a defendant is violating or is about to violate one of the predicate offenses statutes. *See* 18 U.S.C. § 1345(a)(1) & (2). However, haste does not excuse defendants' frivolous assertion of lack of jurisdiction in this court and lack

of the government's standing to seek an injunction. Defendants' counsel made at best a "shotgun" attack, supported by no brief nor citation of authority in writing or in oral argument. Defendants' broadside assertions of lack of standing and jurisdiction fail in the face of the express language of the statute which establishes the standing of the "Attorney General" to "commence a civil action in any Federal court" to obtain an injunction under 18 U.S.C. § 1345(a). Defendants' counsel failed to articulate any argument for a position contrary to this plain language.

any evidence, so that the parties could attempt to negotiate a consent preliminary injunction. Therefore, the court here only summarizes the evidence thus far presented. Any findings of fact here or in the subsequent legal analysis, as well as any conclusions of law forming part of the court's determination of whether the issuance of a preliminary injunction is proper in this case, are intended to be subject to the "general rule" that " 'the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.' " *Henderson v. Bodine Aluminum, Inc.,* 70 F.3d 958, 962 (8th Cir. 1995) (quoting *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981)). Application of this "general rule" is particularly appropriate here in light of the admittedly truncated proceedings and incomplete record upon which any findings of fact and conclusions of law in this order are based.

The government presented evidence that the defendant, Thomas J. Barnes, through his companies, American Savings Express, Images International, American Savings Express and Coupon Express, and Images International Diamond Fulfillment And American Savings Express, is operating a scheme or artifice to obtain money and property through the U.S. Mail by fraudulent means in violation of 18 U.S.C. § 1341. The government and postal inspectors began investigating the scheme in response to many consumer complaints.

The scheme, which, according to the evidence thus far presented, had certainly begun by August of 1995, and possibly earlier, appears to work as follows: Mr. Barnes places advertisements or notices in direct mail solicitations or in newspapers advertising the availability through his various companies of preapproved, unsecured Visa or Mastercard credit cards with credit limits of either $400.00 or $500.00. Responses to these advertisements are directed to post office boxes rented by Mr. Barnes in Sioux City and Hartley, Iowa, and Hudson, Wisconsin. Individuals who respond to the advertisements authorize defendants to debit their bank accounts either $79.00 or $99.00 as a one-time fee in order to receive the "preapproved unsecured" credit card of their choice. However, after the applicant's account has been debited, the applicant is sent a package from defendants, using the name of American Savings Express or Images International, in which the applicant finds, not a credit card, but a merchandise catalog and brochures, as well as an "authorization application" required to complete the individual's application for a credit card. This "authorization application" requires the payment of an additional application fee of $19.95 in order to obtain a Visa or Mastercard. The government asserts that "preapproved unsecured" credit cards are not available through defendants' programs; however, the government had not presented evidence in support of that contention at the time the hearing on the preliminary injunction was recessed.

The United States presented credible evidence, in the form of an affidavit and testimony of Douglas J. Czepa, a Postal Inspector of the United States Postal Inspection Service, of an on-going fraudulent scheme conducted by Mr. Barnes through his companies. That evidence shows that defendants are receiving thousands of dollars a week by return mail at the various addresses of their companies from persons applying for the promised credit cards or other merchandise advertised by Mr. Barnes's companies. Mr. Czepa also detailed several consumer complaints concerning Mr. Barnes's companies made to the various offices of the Postal Inspection Service, asserting not only that consumers never received the credit cards for which they believed that they were applying, but that they also did not receive the merchandise or other benefits for which they paid in response to the packets of information received from Mr. Barnes's companies.

Mr. Czepa also testified at the hearing to having made undercover calls to telephone numbers listed in advertisements placed by Mr. Barnes's companies. The representations purportedly made by representatives of Mr. Barnes's companies in those telephone conversations do not match the information packets sent out by Mr. Barnes's companies. Specifically, Mr. Czepa testified that the representatives of Mr. Barnes's companies failed

to state that there would be any fees in addition to the initial debit of $79 or $99 before the customer's application for the promised credit card would be complete.

## II. LEGAL ANALYSIS

The United States argues that there is probable cause to believe that defendants have been and are engaged in mail fraud in violation of 18 U.S.C. § 1341, which is a predicate offense for an injunction pursuant to 18 U.S.C. § 1345. It argues that defendants' scheme consists of misleading advertising, which can constitute mail fraud, and that intent to defraud is demonstrable from the difference between what is advertised and what is provided in this case. The government argues that continuation of the mail fraud scheme would harm the integrity of the postal system, irreparably harm persons who had paid money or would pay money to the defendants, and would lose that money as the result of the fraud, and that the public interest is served by preventing the continued perpetration of such crimes. The United States seeks very broad injunctions, including enjoining both in-coming and out-going mail to the addresses of Mr. Barnes's companies, the freezing of all of defendants' assets, and restitution to persons who sent money to those companies in response to any of their mailings. While not admitting any wrongdoing, defendants consent to the entry of a preliminary injunction.

### A. Standards For A Preliminary Injunction

Rule 65 of the Federal Rules of Civil Procedure provides for temporary restraining orders and preliminary injunctions as follows:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who

receive actual notice of the order by personal service or otherwise.

*Fed.R.Civ.P.* 65(d). The United States asserts an independent statutory basis for the preliminary injunction in this case, 18 U.S.C. § 1345, which specifically provides for enjoining fraudulent schemes. The question currently before the court, therefore, is whether there are grounds under the rule or the statute for the court to adopt the parties' consent preliminary injunction.

This court has three times during the last year extensively discussed in published opinions the standards for granting a temporary restraining order or issuing a preliminary injunction. *Heather K. v. City of Mallard,* 887 F.Supp. 1249, 1256–66 (N.D.Iowa 1995) (ruling on application for TRO in ADA case, which sought to enjoin municipality's open burning ordinance which was causing injury to child with severe respiratory problems, including explication and application of each of the *Dataphase* factors); *Curtis 1000, Inc. v. Youngblade,* 878 F.Supp. 1224, 1243–49 (N.D.Iowa 1995) (ruling on application for preliminary injunction, which sought to enjoin conduct by a former salesman in violation of a covenant not to compete, also including discussion and application of *Dataphase* factors); *Sports Design and Development, Inc. v. Schoneboom,* 871 F.Supp. 1158, 1162–65 (N.D.Iowa 1995) (concluding standards are the same for a TRO or preliminary injunction, citing *S.B. McLaughlin & Co. v. Tudor Oaks Condominium Project,* 877 F.2d 707, 708 (8th Cir. 1989), and applying those standards from *Dataphase* in case involving alleged trademark infringement of fishing lures). The court will not expound upon those standards extensively here. The important point is that the standards for issuing either a temporary restraining order or a preliminary injunction in this circuit are set out in the seminal decision of *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 & n. 5 (8th Cir.1981) (en banc ).

#### 1. "Dataphase" standards

Over the last decade and a half, the Eighth Circuit Court of Appeals has repeatedly cited the standards stated in *Dataphase* as the basis on which courts are to

determine whether or not to issue a preliminary injunction in a civil case. *Heather K.,* 887 F.Supp. at 1256–57 (citing Eighth Circuit Court of Appeals cases applying these standards). The Eighth Circuit Court of Appeals most recently applied these standards in *Henderson v. Bodine Aluminum, Inc.,* 70 F.3d 958 (8th Cir.1995). One recent formulation of the *Dataphase* standards is as follows:

When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. *Dataphase Sys., Inc. v. C L. Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (*en banc*). We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise." *City of Timber Lake v. Cheyenne River Sioux Tribe,* 10 F.3d 554, 556 (8th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994).

*Pottgen v. Missouri State High Sch. Activities Ass'n,* 40 F.3d 926, 929 (8th Cir.1994). The burden of establishing the propriety of a preliminary injunction is on the movant. *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir.1994); *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734, 737 (8th Cir.1989) (*en banc*). "No single [*Dataphase*] factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Co-op.,* 28 F.3d at 1472 (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 503 (8th Cir.1987), and also citing *Dataphase*).

The United States points out, but apparently does not specifically urge this court to decide, that courts have found that the appropriateness of a preliminary injunction pursuant to 18 U.S.C. § 1345 does not depend upon sufficient showing on all of the *Dataphase* factors, but that courts have considered the requirements of the statute to be somewhat different from those under *Fed.*

R.Civ.P. 65. The court will therefore examine the statute under which the preliminary injunction is sought and consider whether any possible difference in the standards for issuance of a preliminary injunction pursuant to the statute is dispositive of the plaintiff's application for injunctive relief in this case.

## 2. Special standards for § 1345 injunctions

■ Section 1345 of Title 18 of the United States Code provides in its entirety as follows:

### § 1345. Injunctions against fraud

(a)(1) If a person is—

(A) violating or about to violate this chapter or section 287, 371 (insofar as such violation involves a conspiracy to defraud the United States or any agency thereof), or 1001 of this title; or

(B) committing or about to commit a banking law violation as defined in section 3322(d) of this title,

the Attorney General may commence a civil action in any Federal court to enjoin such violation.

(2) If a person is alienating or disposing of property, or intends to alienate or dispose of property, obtained as a result of a banking law violation (as defined in section 3322(d) of this title), or property which is traceable to such violation, the Attorney General may commence a civil action in any Federal court—

(A) to enjoin such alienation or disposition of property; or

(B) for a restraining order to—

(i) prohibit any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent value; and

(ii) appoint a temporary receiver to administer such restraining order.

(3) A permanent or temporary injunction or restraining order shall be granted without bond.

(b) The court shall proceed as soon as practicable to the hearing and determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take

such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought. A proceeding under this section is governed by the Federal Rules of Civil Procedure, except that, if an indictment has been returned against the respondent, discovery is governed by the Federal Rules of Criminal Procedure.

18 U.S.C. § 1345. Thus, on its face, the statute provides that the Attorney General may seek an injunction "in any Federal court" when a person has or is about to violate one of the predicate statutes, including the mail fraud statute, which is 18 U.S.C. § 1341, see 18 U.S.C. § 1345(a), where an injunction is "warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons." 18 U.S.C. § 1345(b).

Surprisingly few federal courts, very few of those appellate courts, have passed upon the statute's requirements in published opinions. In *United States v. American Heart Research Found., Inc.*, 996 F.2d 7 (1st Cir. 1993), a case not otherwise involving the requirements of the statute, the First Circuit Court of Appeals noted that § 1345 "gives the government a civil action for expedited injunctive relief where mail fraud is occurring or is threatened." *American Heart Research Found.*, 996 F.2d at 8–9. A much more expansive and helpful discussion of the purposes and requirements of the statute is found in the opinion of the Sixth Circuit Court of Appeals in *United States v. Brown*, 988 F.2d 658 (6th Cir.1993), *reh'g denied* (June 8, 1993).

In *Brown*, the Sixth Circuit Court of Appeals noted that § 1345, sometimes referred to as the "fraud injunction statute," was enacted as part of the Comprehensive Crime Control Act of 1984. *Brown*, 988 F.2d at 660. After reviewing various amendments to the statute, the court found that the present version of the statute had been enacted in 1990 as part of the Crime Control Act of that year. *Id.* at 660–61. The court concluded that the principal issues the district court must decide before issuing a preliminary injunction under § 1345 are (1) whether an injunction is appropriate, and (2) if an injunction is appropriate, what is its proper scope. *Id.* at 663.

In explaining these requirements,[3] the appellate court concluded that the first requirement meant that the plaintiff has the burden of proving by the preponderance of the evidence that a fraud has been committed. *Id.* In so concluding, the Sixth Circuit Court of Appeals rejected the suggestion that § 1345 was comparable to the forfeiture section of the amended Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 881, which requires only that the plaintiff show probable cause to believe that defendants are engaged in prohibited activity, and that upon such a showing, the burden shifts to the defendant to prove by the preponderance of the evidence that the defendant is not engaged in such activity or that the assets in question are not the proceeds of illegal activity. *Id.* (rejecting analysis and conclusions of the district court in *United States v. William Savran & Assocs.*, 755 F.Supp. 1165, 1183–84 (E.D.N.Y.1991)). The court concluded that to allow this lesser, "probable cause" standard of proof for a preliminary injunction under § 1345, a civil statute, would reject the traditional burden in civil cases and provide the United States with a substantial procedural advantage. *Id.*

For the reasons stated in the *Brown* decision, this court concurs with the conclusion of the Sixth Circuit Court of Appeals that § 1345 requires the government to show *by the preponderance of the evidence*, not merely probable cause to believe, that a fraud is being committed, *see Baker Elec. Co-op., Inc.*, 28 F.3d at 1472 (the burden of establishing the propriety of a preliminary injunction in a civil case is on the movant), albeit with the following caveat. Rather than proving to the appropriate standard that a fraud is actually being committed, *Brown*, 988 F.2d at 663, the government may also obtain a pre-

---

**3.** This court will return to the question of the proper scope of the preliminary injunction in a later section after the court has determined whether a preliminary injunction is "appropriate."

liminary injunction if it proves by the preponderance of the evidence that the defendant is "about to" commit such a fraud. 18 U.S.C. § 1345(a)(1)(A) (an injunction is available if a person is "violating *or about to violate*" the chapter or other listed provisions); *see also American Heart Research Found.*, 996 F.2d at 8–9 (stating in *dicta* that § 1345 "gives the government a civil action for expedited injunctive relief where mail fraud is *occurring or is threatened,*" with emphasis added by this court).

Because published appellate court decisions provide so little guidance, the court looks to the decisions of other district courts, which, of course, confront motions for preliminary injunctions under the statute in the first instance and must fashion, usually very quickly, workable approaches to disposition of such motions. A remarkably thorough discussion of the standards for issuance of a preliminary injunction under 18 U.S.C. § 1345 is to be found in the decision of the U.S. District Court for the District of New Jersey. *United States v. Weingold*, 844 F.Supp. 1560 (D.N.J.1994). However, in light of this court's conclusions above, this court takes issue with the conclusion of the *Weingold* court that "[t]o support its application for a preliminary injunction under 18 U.S.C. § 1345, the Government must demonstrate by a preponderance of the evidence that probable cause exists to believe that the defendants are currently engaged or about to engage in a fraudulent scheme violative of 18 U.S.C. § 1341." *Weingold*, 844 F.Supp. at 1573; *see also United States v. Belden*, 714 F.Supp. 42, 45–46 (N.D.N.Y.1987) (requiring probable cause to believe that defendant is currently engaged in on-going fraudulent scheme). In support of this proposition, the *Weingold* court cites the *Savran* decision specifically rejected by the Sixth Circuit Court of Appeals in *Brown. See Brown*, 988 F.2d at 663.[4] The *Weingold* decision does not so much as mention the decision of the Sixth Circuit Court of Appeals in *Brown*, even though the *Weingold* decision was rendered almost one full year after the appellate

court's decision and eight months after the appellate court denied a motion for rehearing. This court cannot explain such an oversight. However, that does not mean that the standards stated by the district courts in either *Weingold* or *Savran* are to be entirely disregarded, only their conclusions about the burden of proof applicable to those standards.

The *Weingold* court concurred with the *Savran* court's holding that proof of irreparable harm, one of the *Dataphase* factors and a factor in almost all common-law preliminary injunction determinations, "is not necessary for the Government to obtain a preliminary injunction" pursuant to § 1345. *Weingold*, 844 F.Supp. at 1573; *Savran*, 755 F.Supp. at 1178–80. The *Savran* court reached this conclusion after noting the similar conclusion of yet another district court in *United States v. Belden*, 714 F.Supp. 42, 45 (N.D.N.Y.1987), and by referring to the legislative history to discover the intent of Congress in passing the statute. *Savran*, 755 F.Supp. at 1178. The *Savran* court concluded from statements that the attorney general should be empowered to act under the statute even when it only appears that a person is about to engage in a criminal fraud offense that a showing of irreparable harm was not required to obtain such an injunction. *Id.* The *Savran* court also noted that where Congress has provided for enforcement of a statute by way of an injunction, courts have consistently held that irreparable harm need not be demonstrated, because, so long as the statutory conditions are met, irreparable harm to the public is presumed. *Id.* at 1179.

This court concludes that "irreparable harm" is not required, because the statute itself states the ground upon which injunctive relief can be granted to be a showing that the injunction is "warranted to prevent a continuing and *substantial* injury to the United States or to any person or class of persons." 18 U.S.C. § 1345(b) (emphasis added). Because the language of the statute is unambiguous, the court need not take recourse to

---

4. Although *Weingold* states the standard of proof in strangely hybrid terms as "a preponderance of the evidence" that "probable cause exists," probable cause proved by a preponderance of the evidence is still not the same as proving by the preponderance of the evidence that a fraud is being or is about to be committed.

legislative history or judicial interpretations of similar statutes to reach this conclusion. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (interpretation of a statute begins with its language, and, when the statutory language is unambiguous, also ends there). However, because proof of irreparable harm clearly meets the "substantial injury" requirement stated in the statute, if irreparable harm is shown, it weighs in favor of the issuance of a preliminary injunction. *See United States v. Cen–Card Agency*, 872 F.2d 414 (3d Cir.1989) (Table) (affirming district court's decision that irreparable harm had been shown and justified, in part, issuance of a preliminary injunction under § 1345, and therefore declining to decide whether irreparable harm is or is not required under the statute); *Savran*, 755 F.Supp. at 1180 (holding that even though irreparable harm is not required, it had been shown, and weighed in favor of issuance of the preliminary injunction).

◼ Both *Weingold* and *Savran* hold that the statute requires proof of an *on-going* fraudulent scheme, *Weingold*, 844 F.Supp. at 1573; *Savran*, 755 F.Supp. at 1178, and this court finds these conclusions to be more sound. The statute, by its terms, states that the requirement is that a person "is violating or is about to violate" one of the predicate offenses statutes. 18 U.S.C. § 1345(a)(1); *Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030 (statutory interpretation begins and ends with unambiguous language). In this conclusion, this court departs somewhat from the conclusions of the Sixth Circuit Court of Appeals in *Brown*, which allowed a preliminary injunction to issue where the government proved by the preponderance of the evidence that a fraud "has been" committed, *Brown*, 988 F.2d at 663, to the extent that the language of the Sixth Circuit Court of Appeals suggests that there is no requirement of an on-going fraudulent scheme. The statute expressly states the "violation" requirement in the present and future tense, not the past tense. The court notes, and agrees with, the decision of the U.S. District Court for the Southern District of Iowa that a temporary cessation of activities, particularly where it is the result of an agreement to avoid a tempo-

rary restraining order, or, this court would add, in response to a government investigation, does not defeat the "on-going scheme" requirement. *United States v. Hartbrodt*, 773 F.Supp. 1240, 1243 (S.D.Iowa 1991).

◼ The court concludes that these special requirements for a preliminary injunction pursuant to § 1345 all fall within the four *Dataphase* factors, although the requirements on some of the factors themselves may be somewhat relaxed. For example, the *Dataphase* factor of the movant's probability of success on the merits is comparable to the statutory requirement that the government prove a criminal fraud by the preponderance of the evidence, which is a lesser burden of proof than is required for a criminal conviction of the predicate offense, proof beyond a reasonable doubt. The *Dataphase* factor of proof of a threat of irreparable harm to the movant absent the injunction is comparable to the statutory requirement of a "substantial injury" to the United States, some person, or class of persons. The *Dataphase* factor requiring a balance between the harm and the injury that the injunction's issuance would inflict on other interested parties is comparable to the on-going fraudulent scheme requirement of the statute. Finally, the public interest factor of *Dataphase* is implicitly met if the statutory provisions are met, because the legislative history demonstrates that the statute was passed by Congress to protect the public interest in effective governmental responses to fraudulent schemes. *Savran*, 755 F.Supp. at 1178–79 (quoting legislative history that demonstrates § 1345 was passed to broaden and speed up the government's responses to fraudulent schemes to prevent the continued victimization of innocent people). Thus, the court concludes that proof of the *Dataphase* factors would amount to proof of the requirements of the statute.

## B. Whether A Preliminary Injunction Is "Appropriate" In This Case

◼ The court turns now to the first of the *Brown* court's inquiries, *i.e.*, whether a preliminary injunction is "appropriate" in this case. *Brown*, 988 F.2d at 663. Although the court has concluded that the

*Dataphase* and statutory factors are comparable, the court will analyze the appropriateness of a preliminary injunction in this case in terms of both the *Dataphase* factors and the statutory factors.

■ The first factor considered by the courts under *Dataphase* when ruling on an application for a TRO or preliminary injunction is the likelihood or probability of success on the merits. *Pottgen,* 40 F.3d at 929. The first factor under the statute is proof of a violation of a predicate offenses statute by the preponderance of the evidence, 18 U.S.C. § 1345(a); *Brown,* 988 F.2d at 663, which is less than the necessary proof, proof beyond a reasonable doubt, for a criminal conviction under the predicate offenses statutes. Likelihood of success on the merits requires that the movant find support for its position in governing law. *See, e.g., Baker Elec. Co-op,* 28 F.3d at 1473–74 (Indian tribe's sovereignty to regulate electrical services). The governing law here is the mail fraud statute, 18 U.S.C. § 1341, violation of which is asserted as the ground for the preliminary injunction under § 1345. 18 U.S.C. § 1345(a) (listing crimes under Chapter 63, which includes mail fraud, among the predicate offenses for an injunction). Proof of mail fraud requires a fraudulent scheme using the mails and intent to defraud. 18 U.S.C. § 1341; *Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954); *United States v. Leyden,* 842 F.2d 1026, 1028 (8th Cir.1988); *United States v. Pintar,* 630 F.2d 1270, 1280 (8th Cir.1980).

Here, the preponderance of the evidence is that Mr. Barnes and his companies are using the mails, that they are using the mails to perpetrate a fraudulent scheme involving applications for preapproved, unsecured credit cards without disclosing to the applicants for such cards that there are additional fees or other requirements beyond their initial fee before they will obtain their credit card.[5] The court finds that the intent to defraud is proved to the appropriate standard here by the fact that the packets sent to customers of Mr. Barnes's business do not match what those customers were led to believe they would receive. Because the court finds by the preponderance of the evidence that a mail fraud has been or is about to be committed, the court concludes that the United States has an adequate likelihood of success on the merits of its suit for a permanent injunction against the operations of Mr. Barnes's companies.

Turning to the second factor under *Dataphase* and § 1345, the court finds that there is a threat of irreparable harm absent the injunction, *Pottgen,* 40 F.3d at 929, or, at the very least, a threat of substantial injury to the members of the class of persons who might respond to the defendants' misleading solicitations. 18 U.S.C. § 1345(b). The evidence shows that the defendants' fraudulent scheme is reaping hundreds of responses monthly and involves payments by customers of thousands of dollars weekly.

The third *Dataphase* factor, "the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties," *Pottgen,* 40 F.3d at 929, which this court has characterized as comparable to the on-going fraudulent scheme requirement of § 1345(a) (violating or about to violate) and (b) ("continuing" as well as "substantial" injury), is also met in this case. The need to stop the harmful impact on customers of defendants' business outweighs the harm to the defendants of restricting their business. To put it another way, it is the on-going nature of the defendants' business and the continuing threat the operation of that business poses that requires injunctive relief at this time and outweighs the harm such injunctive relief may impose upon the defendants.

Finally, because the statutory factors have been met, the "public interest" factor in the *Dataphase* analysis is also present. The public interest is served by a prompt and appropriate response to a fraudulent scheme

---

5. The court has not yet been presented with any evidence from which it could conclude that Mr. Barnes's companies do not eventually provide the credit cards for which customers make applications in response to his solicitations. Those solicitations, however, are misleading in the respect the court has identified here.

victimizing citizens. Because all of the *Dataphase* and statutory factors are met in this case, the court concludes that issuance of the consent preliminary injunction is "appropriate." *Brown,* 988 F.2d at 663.[6]

### C. Scope Of The Injunction

 Pursuant to Federal Rule of Civil Procedure 65(d), which requires, *inter alia,* that "every order granting an injunction and every restraining order ... shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained ...," the preliminary injunction in this case must specifically sets forth its terms. Furthermore, the second of the inquiries under § 1345 required by the Sixth Circuit Court of Appeals in *Brown* is, if an injunction is appropriate, what is its proper scope. *Brown,* 988 F.2d at 663. Therefore, the court will consider whether the terms of the consent preliminary injunction are sufficiently specific and of appropriate scope to effect the proper ends of the injunction.

In its consideration of the scope of a preliminary injunction under § 1345 in *Brown,* the Sixth Circuit Court of Appeals first considered a question at least as important in this application for a preliminary injunction as it was there: whether or not § 1345 allows the district court, as part of a preliminary injunction, to freeze assets at all in a nonbanking law case. *Brown,* 988 F.2d at 660–63. The consent preliminary injunction in this case freezes the defendants' accounts at a number of banks, with certain limited exceptions, including refunds to customers and payment of salaries and reasonable business expenses. In *Brown,* the court noted that the provisions for freezing of assets in the statute appear only in the section, 18 U.S.C. § 1345(a)(2), which pertains to injunctions for violations of banking laws. *Id.* at 662. After examining the legislative history, which indicated that the freezing of assets had been available under the statute prior to its

amendment to address banking law violations, the court ultimately held that freezing of assets is within the scope of 18 U.S.C. § 1345, even in cases not involving banking-law violations. *Id.* at 663. Thus, this court concludes that freezing of assets is within the scope of a § 1345 preliminary injunction in this case.

In *Brown,* the Sixth Circuit Court of Appeals held that the district court's injunction exceeded its proper scope, because, although 75% of the assets of a doctor accused of Medicare fraud came from business unrelated to Medicare claims, the district court had ordered all of the doctor's assets frozen except for a monthly allowance for business expenses. *Brown,* 988 F.2d at 664; *see also United States v. Jones,* 652 F.Supp. 1559, 1560 (S.D.N.Y.1986) (injunction to freeze proceeds from sale of a house exceeded the proper scope of § 1345 injunction where government made no showing that house was purchased with proceeds from fraudulent scheme even where proceeds from house might be used to pay restitution). Because, contrary to the facts in the *Brown* case, *all* of the defendants' assets in the listed bank accounts are related to the alleged fraud, *all* are subject to a freeze, with the exception, also permitted in *Brown,* of an allowance for monthly business expenses. *Id.* at 664. The court concludes that the consent preliminary injunction is also of proper scope and sufficiently specific in all of its terms to meet the requirements of Rule 65, the statute, and *Brown.*

### III. CONCLUSION

The court concludes that 18 U.S.C. § 1345, the so-called "fraud injunction statute," requires application of the traditional burdens of proof for the issuance of a civil injunction. In light of the decision of the Sixth Circuit Court of Appeals in *Brown,* 988 F.2d at 663, regarding issuance of an injunction pursuant to the statute, and prevailing Eighth Circuit

---

**6.** The court reiterates that the findings of fact and conclusions of law upon which it bases its final conclusion that a preliminary injunction should issue are intended to be "preliminary" or "provisional" only, and are based on a "truncated" record; that is, they are specifically intended

to be subject to the "general rule" that " 'the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.' " *Henderson,* 70 F.3d at 962.

Court of Appeals precedent on civil injunctions pursuant to *Fed.R.Civ.P.* 65, an injunction pursuant to the statute may only issue upon the government's proof by the preponderance of the evidence that a violation of one of the specified fraud statutes is occurring or is about to occur. Contrary to the conclusions of other district courts to address the issue, such an injunction may not issue merely upon the government's showing of probable cause to believe such a violation is occurring or about to occur, followed by a shift of the burden of proof to the defendant to prove by a preponderance of the evidence that there is not and will not be any violation.

Although the standard of proof is the same under the rule or the statute, the court concludes that determining whether or not a preliminary injunction should issue pursuant to § 1345 involves the application of special standards in other respects. However, the court also concludes that those special standards are comparable to the classic *Dataphase* factors applicable to civil injunctions in this circuit, so that no departure from the usual analytical framework for civil injunctions is required. The differences are such that if the *Dataphase* factor requiring a higher threshold showing of "irreparable" injury is met, the statutory standard of "substantial" injury will also be met. Similarly, if the statutory factors are met, the *Dataphase* "public interest" factor is also met, because the legislative history of § 1345 demonstrates the public interest in issuance of a preliminary injunction when the statutory requirements have been met.

In this case, the court finds that all of the applicable factors have been met. Therefore, the court confirms its adoption of the parties' consent preliminary injunction entered into the record on December 21, 1995.

**IT IS SO ORDERED.**