**UNITED STATES of America, Plaintiff,**

v.

**QUADRO CORPORATION, Wade L. Quattlebaum, Raymond Fisk, Malcom S. Roe, Quadro Corporation of Texas, William J. Long, et al., Defendants.**

No. 1:96CV38.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 10, 1996.

---

Mike Bradford, United States Attorney, Robert Rawls, Ken Dodd, Assistant United States Attorneys, Beaumont, TX, for plaintiff.

Robert Lyles, Ingrid Blackwelder, Timothy Culp, Charleston, SC, Hubert Oxford III, Beaumont, TX, for defendants.

### PRELIMINARY INJUNCTION HEARING FINDINGS OF FACT AND CONCLUSIONS OF LAW

HEARTFIELD, District Judge.

1. Before the court is the plaintiff, United States of America's, petition for injunctive and other relief pursuant to 18 U.S.C. § 1345. Plaintiffs allege that the defendants are engaged in a mail and wire fraud scheme to defraud numerous consumers, particularly law enforcement agencies, correctional institutions, and school systems, through false and misleading representations concerning a remote sensoring device, known as the Quadro Tracker, which allegedly locates contraband, drugs, and guns by identifying molecular frequencies. Although Quadro manufactures and sells other products including, the Golfball Gopher, Trailhook and Treasure Hunter, purportedly based on the same principal of locating items by identifying molecular frequencies, the plaintiff's petition for injunction only relates to the marketing and sale of the Quadro Tracker.

2. Defendants oppose plaintiff's petition on the grounds that they are not engaged in a scheme to defraud under the mail and wire fraud statutes, 18 U.S.C. § 1341 and § 1343. Defendants contend that the Quadro Tracker can detect contraband substances such as marijuana, cocaine, other drugs, gunpowder, and other explosives, and guns. Defendants' marketing literature further represents that the devise operates on a scientific principle of matching molecular emissions from the substance or object being searched for the molecular emissions in a locator card carried in the devise.

3. This court having heard the evidence and arguments offered by both parties, enters the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). These findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits. *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).

### I. Findings of Fact

1. Defendant Quadro Corporation ("Quadro") and its principals, defendants Wade L. Quattlebaum, Raymond L. Fisk and Malcolm S. Roe, manufacture, distribute and sell the device known as the Quadro Tracker.

2. The defendants market, promote, and sell the Quadro Tracker to correctional facilities, schools, and law enforcement agencies as a "scientific breakthrough in modern physics" that has remote sensing capabilities to detect various forms of contraband including marijuana, cocaine and gun powder or explosives.

3. Defendants' promotional literature and brochures make representations about the capabilities of the Quadro Tracker. For example, one brochure, Plaintiff's Exhibit 3A, states:

USE IN SCHOOLS:

The Tracker will locate loaded weapons, marijuana, cocaine, crack, heroin, in cars, lockers and buildings, without opening them.

It will locate substances on or in individuals, without physically searching them.

The object is to use the Tracker as a deterrent for students who participate in illicit drug abuse.

USE BY LAW ENFORCEMENT:

[Police Depts., Sherriffs Depts., ATF, FBI, DEA, Border Patrol, Texas Rangers.]

The Tracker will locate loaded weapons, drugs, explosives and currency.

Locate within inches inside a house or car without entering either!

USE BY PRISONS & CUSTOMS:

Control entry of currency, drugs, loaded guns and explosives into secured premises or across borders. Can be tracked from vehicles, boats, planes, even helicopters and blimps.

4. The marketing literature states that the devise contains an inductor, conductor, and an oscillator, as well as a preprogrammed "chip" in the locator card for each type of contraband. This implies that the device is an electronic or electrical instrument.

5. The tests, including x-rays of the devise, conducted by the plaintiffs' experts, reveal the devise to be a hollow plastic shell with a retractable transistor radio-type antenna. The preprogrammed chip is a small piece of polymer coated paper run through a copy machine and sealed between two pieces of plastic. Reliable scientific tests and analysis conducted by the plaintiff negate defendants' representations and claims that the Quadro Tracker has remote sensing capabilities, and also conclude that the operating principals suggested by the manufacturer are scientifically unsound and incorrect.

6. The marketing brochures and Quadro Tracker are delivered through authorized mail depositories of the U.S. Postal Services and also transmitted over telephone facsimiles wires in interstate commerce.

7. Sales of the device are being made throughout the United States through authorized distributors and agents of the defendants.

8. Because the devise is marketed to law enforcement agencies and schools there exists the potential for jeopardizing serious prosecutions as well as violating basic constitutional liberties.

9. The defendants' sale of the Quadro Tracker is an ongoing scheme and defendants will likely continue to advertise and sell the devise to consumers and entities unless the injunctive relief requested is granted.

## II. Conclusions of Law

Plaintiff filed an application with this court for preliminary injunctive relief, and other equitable relief, including a freeze of defendants' assets pursuant to 18 U.S.C. § 1345. Plaintiff seeks to enjoin defendants from using the United States mails or private commercial interstate carriers or the telephone or interstate wires to solicit customers or entities, promote, sell, transfer, or demonstrate the Quadro Tracker devise, or receive monies from marketing schemes which are the subject of this action, or to transmit any other substantially similar solicitations or promotional materials, which violate 18 U.S.C. § 1341 or § 1343, two of the predicate offenses which serve as a basis for injunctive relief under § 1345.

### A. Statute

■ On its face 18 U.S.C. § 1345 provides that the Attorney General may seek an injunction "in any Federal court" when a person has or is about to violate one of the predicate statutes, including mail fraud or wire fraud, 18 U.S.C. § 1341 and § 1343, where an injunction is "warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons." 18 U.S.C. § 1345.

■ Before issuing a preliminary injunction under § 1345, a court must decide (1) whether an injunction is appropriate and (2) if an injunction is appropriate, what is the proper scope. *United States v. Brown,* 988 F.2d 658, 663 (6th Cir.1993).

### B. Whether a Preliminary Injunction is Appropriate in this Case

### 1. Standard of Proof for a § 1345 Injunction

■ Plaintiffs argue that this court should follow a line of cases that set forth a probable cause standard of proof. This means that the government would only have to show probable cause that the defendants have committed or about to commit mail or wire

fraud, and then the burden shifts to the defendants to prove by a preponderance of the evidence that the defendants are not engaged in such activity or that the assets in question are not the proceeds of illegal activity. *United States v. William Savran & Associates,* 755 F.Supp. 1165, 1184–84 (E.D.N.Y.1991). *See also United States v. Weingold,* 844 F.Supp. 1560, 1573 (D.N.J. 1994).

Defendants argue that this court should reject the probable cause standard and follow the line of cases that sets forth a preponderance of the evidence standard of proof. This means that the government would have the traditional burden of proving by the preponderance of the evidence that defendants have committed or are about to commit mail or wire fraud. *United States v. Brown,* 988 F.2d 658, 663 (6th Cir.1993); *United States v. Barnes,* 912 F.Supp. 1187, 1195 (N.D.Iowa). Additionally, the government would have to prove which assets are proceeds of illegal activity before assets may be seized.

In *Brown,* the Sixth Circuit held that "the district court, in deciding whether to issue a preliminary injunction may not punish [the defendant] without first determining the extent of his illegal acts." The *Brown* court further held that the traditional burden of proof in civil actions, requiring plaintiff to prove the case by a preponderance of the evidence, should be applied to cases under § 1345, because, "[t]o hold otherwise would provide the United States a substantial procedural advantage over the traditional civil plaintiff, which is not mandated by the language of § 1345." *United States v. Brown,* 988 F.2d 658, 663–64 (6th Cir.1993).

For the reasons cited in the *Brown* and *Barnes* decisions, this court concurs with the conclusion of the Sixth Circuit that § 1345 requires the government to prove in civil actions by preponderance of the evidence that mail fraud or wire fraud is being committed, or is about to be committed. Proof by preponderance of the evidence means to prove that something is more likely than not so. *Matter of Briscoe Enterprises, Ltd. II,* 994 F.2d 1160, 1164 (5th Cir.1993).

▪ At the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence. Thus, the district court can accept evidence in the form of deposition transcripts and affidavits. *Sierra Club, Lone Star Chapter v. F.D.I.C.,* 992 F.2d 545 (5th Cir.1993). While the government may use hearsay to support its application for preliminary injunction, hearsay should be given less credence than direct allegations. *Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.,* 446 F.2d 353, 357 (5th Cir.1971).

▪ The government is not required to prove irreparable harm under § 1345. Irreparable harm is the standard in almost all common law preliminary injunction determinations. *Barnes,* 912 F.Supp. at 1196; *Weingold,* 844 F.Supp. at 1573; *Savran,* 755 F.Supp. at 1178–80. Irreparable harm need not be demonstrated because so long as the statutory conditions are met, irreparable harm to the public is presumed. *Savran,* 755 F.Supp. at 1179.

## 2. Elements of Mail Fraud and Wire Fraud

▪ To sustain a mail fraud [or wire fraud] conviction, the government must prove both a scheme to defraud and use of the mails [or interstate wires] for purposes of executing the scheme. *United States v. Church,* 888 F.2d 20 (5th Cir.1989); *United States v. Freeman,* 619 F.2d 1112 (5th Cir.); *cert. denied,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1980).

The government is required to prove that the defendants had a specific intent to defraud or that they "made material misrepresentations of fact with reckless disregard to their truth or falsity." *Cen–Card Agency/C.C.A.C.,* 724 F.Supp. 313, 316–17 (D.N.J. 1989).

▪ Even one act involving the use of the mail or telephone can support the government's claim for an injunction, if it is part of the scheme to defraud. *United States v. Hartbrodt,* 773 F.Supp. 1240, 1242 (S.D.Iowa 1991).

■ The court finds that the government has demonstrated, by a preponderance of the evidence, that defendants engaged in a scheme to defraud and that defendants used the U.S. mail and interstate wires to perpetrate the fraud. This finding is supported by the testimony of the witnesses, exhibits, and affidavits. The evidence shows by a preponderance that:

(1) Defendants made *representations* regarding the structure and ability of the Quadro Tracker.

(2) Defendants representations were *false*. The government presented evidence regarding the structure of the Quadro Tracker which shows that the "chip" inside the device consists of a piece of copy paper with a photocopied image of the object which the Quadro Tracker will purportedly find. The governments' experts testified that the device could not locate objects as represented by defendants under any known principles of modern science. The court finds the testimony of defendants' experts credible and compelling.

(3) The manner in which the Quadro Tracker was manufactured by defendants establishes that the defendants *knew or should have known* that there was no reasonable scientific basis for the Quadro Tracker to operate as advertised in their marketing brochures, demonstrations or training sessions. Therefore, the defendants *knew or should have known* that their representation were false.

Even if defendants subjectively believed in the ability of the Quadro Tracker, defendants made numerous representations to government agencies and the general public *with reckless disregard to the truth or falsity* of the representations.

(3) Defendants enticed law enforcement, correctional and educational authorities to purchase the Quadro Tracker through the use of the U.S. *mails and over interstate wires* via telephone calls and faxes.

(4) The extent of defendant's advertising and distributorship network indicates that sale of the Quadro Tracker is an *ongoing scheme* which would continue *to defraud* government agencies and consumers unless an injunction is granted.

## 3. Application of Common Law Factors for Injunctions

■ Although the court has determined that the statutory factors for injunctions are comparable, the court will analyze the appropriateness for preliminary injunctions under both the statutory factors and the common law factors. *Barnes*, 912 F.Supp. at 1198.

(1) Likelihood or probability of success on the merits

[The government has a high likelihood of success on the merits of its suit for a permanent injunction.]

(2) Substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted.

[Because defendants encourage the police, correctional, and educational authorities to rely on the Quadro Tracker to detect drugs and guns, if an injunction is not granted these agencies and the general public relying on the Tracker's supposed capabilities could be placed in danger as a result of undetected drugs and guns. The Quadro Tracker also potentially violates the constitutional rights of those being searched.]

(3) The threatened injury to the plaintiff and the public outweighs the threatened harm the injunction may have on the defendants.

[The threatened injury to the defendants is minimal compared to the potential harm that could result by allowing defendants to continue selling the Quadro Tracker to the public.]

(4) Granting the preliminary injunction will not disserve the public interest.

[The public interest is served by a prompt response to the fraudulent scheme which potentially injures government agencies and the general public.]

*Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974).

## C. Scope of the Injunction

■ A second inquiry, at least as important as the appropriateness of a preliminary injunction is whether or not § 1345 allows a district court, as part of a prelimi-

nary injunction, to freeze assets in nonbanking cases. Both the *Barnes* and *Brown* cases have held that even in nonbanking cases, freezing assets is within the scope of a § 1345 preliminary injunction. *Barnes,* 912 F.Supp. at 1198; *Brown,* 988 F.2d at 660–63. This court concurs with *Barnes* and *Brown* and finds that the court may freeze assets as part of a preliminary injunction based on mail fraud or wire fraud. The district court may freeze only those assets [which the government has proven by a preponderance of the evidence] to be related to the alleged fraud. *Brown,* 988 F.2d at 664. Freezing assets which the government did not show by preponderance of the evidence to be proceeds from a fraudulent scheme would exceed the scope of the injunction.

The court finds that the government has not shown by a preponderance of the evidence any specific assets which are proceeds from the fraudulent scheme. Therefore, the court will not enter an order freezing the defendants' assets.

**D. Conclusion**

In conclusion, the court finds that the defendants were engaged in a scheme to defraud in violation of the mail fraud and wire fraud statutes, 18 U.S.C. § 1341 and § 1343. Further, the court finds that the defendants' participation in the scheme to defraud was intentional. Accordingly, the court will GRANT a preliminary injunction within the limits set forth in the following order.

### ORDER OF PRELIMINARY INJUNCTION

For the reasons stated in the Findings of Fact and Conclusions of Law previously entered in this matter, the court ORDERS that defendants, Quadro Corporation, Wade L. Quattlebaum, Raymond Fisk, and Malcom S. Roe are preliminarily enjoined as follows:

1. Defendants and their agents, officers and employees, distributors and independent salespersons, and all persons in active concert or participation with them, are hereby enjoined and restrained from using the United States mails or private commercial interstate carriers, or causing others acting on their behalf to use the United States mails or private commercial interstate carriers, to solicit customers or entities, promote, sell, transfer, or demonstrate the Quadro Tracker device, or receive monies from marketing said device.

2. Defendants and their agents, officers and employees, distributors and independent salespersons, and all persons in active concert or participation with them, are hereby enjoined and restrained from using interstate telephone or wire connections, or causing others acting on their behalf to use interstate telephone or wire connections, to solicit customers or entities, promote, sell, transfer or demonstrate the Quadro Tracker device, or receive monies from marketing said device.

3. Defendants and their agents, officers and employees are hereby restrained from taking any action to conceal, alter, sell, lease, loan, or destroy any records relating to the fraudulent scheme, including, but not limited to, all mailing lists, call lists, pitch sheets, customer orders, correspondence, and invoices.

4. Defendants and their agents, officers and employees, and all persons in active concert or participation with them, are hereby enjoined and restrained from taking any action to conceal, alter, or destroy any requests for refunds or remittances tendered by purchasers of the fraudulent device. Further, Defendants are ordered to make such requests available to the Plaintiff, United States, and the court for inspection.

5. Plaintiff, United States, and its agents, employees and contractors may detain any and all mail, parcels and packages addressed to defendants and defendant corporation at the addresses on 139 Pioneer Gym Road, Harleyville, South Carolina and 175 Settlers Bend, Shreveport, Louisiana, provided that the detained mail is to be open to examination by the respective defendants and such mail that is not connected to the fraudulent scheme is to be immediately delivered to the defendants.

The court further ORDERS that a trial on this matter be set at the earliest possible date to minimize any harm to the defendants.

Therefore, a trial will by set for 9:00 a.m. on March 25, 1996.